IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:18-CR-38-D

UNITED STATES OF AMERICA,      )
                               )
                               )
                               )
        v.                     )         **ORDER**
                               )
RONALD WYNN,                   )
                               )
        Defendant.             )

On June 22, 2022, Ronald Wynn ("Wynn" or "defendant") moved through counsel for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 45] and filed a memorandum in support [D.E. 46]. On July 6, 2022, the government responded in opposition [D.E. 48]. As explained below, the court denies Wynn's motion for compassionate release.

I.

On October 7, 2019, pursuant to a written plea agreement, Wynn pleaded guilty to conspiracy to obtain heroin and other prohibited objects in prison in violation of 18 U.S.C. §§ 1791 and 371 (count two). See [D.E. 1, 31, 32]. On January 7, 2020, the court held a sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 39–41]. The court calculated Wynn's total offense level to be 26, his criminal history category to be IV, and his advisory guideline range to be 60 months' imprisonment (the statutory minimum). See [D.E. 41] 1. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Wynn to 60 months' imprisonment to run consecutively to any earlier term of incarceration imposed. See [D.E. 40] 2. Wynn did not appeal.

II.

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s exhaustion requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter

2

alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 cmt. n.3; McCoy, 981 F.3d at 286 n.9.

No Sentencing Commission policy statement currently applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82. U.S.S.G. § 1B1.13 is a policy statement that applies to compassionate release motions filed by the BOP Director. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's minor children or incapacitated spouse or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1(A). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction. Id. § 1B1.13 cmt. n.2.

On November 24, 2020, Wynn applied to his warden for compassionate release and was

3

denied. See [D.E. 46] 5; [D.E. 48] 4. The government agrees that Wynn has met 3582(c)(1)(A)'s exhaustion requirements. See [D.E. 48] 4. Therefore, the court addresses Wynn's motion on the merits. See Muhammad, 16 F.4th at 130.

Wynn seeks compassionate release pursuant to section 3582(c)(1)(A) and cites the COVID-19 pandemic, his medical conditions (obesity, hypertension, and prediabetes), his race, his rehabilitative efforts, his employment in prison, his allegedly lowered security risk, and his supportive family and friends. See [D.E. 46] 6–22.

As for the "medical condition of the defendant" policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Wynn is obese, has hypertension, and has prediabetes and argues that his medical conditions along with his race put him at heightened risk of serious infection from COVID-19. See [D.E. 46] 5–8. Other than the risk from COVID-19, Wynn does not argue that the BOP is not providing treatment for his obesity, hypertension, and prediabetes. See [D.E. 46]; see also [D.E. 46-2] (documenting the extensive medical treatment Wynn received in prison).

Wynn received two doses of the Moderna COVID-19 vaccine. See [D.E. 46-2] 22. The vaccine provides protection. See, e.g., United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) (unpublished); United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished) (noting that although "vaccination does not rule out reinfection . . . this does not diminish that vaccination mitigates the risk of COVID-19 complications"); United States v. Shettler, No. 21-10484, 2022 WL 620311, at *4 (11th Cir. Mar. 3, 2022) (per curiam) (unpublished); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1

4

(9th Cir. Jan. 25, 2022) (unpublished); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release), cert. denied, 142 S. Ct. 2742 (2022); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). And the wide availability of COVID-19 vaccines greatly diminishes the risk to Wynn from COVID-19 whether he is in prison or not. See, e.g., Scalea, 2022 WL 795425, at *1; Ibarra, 2022 WL 229198, at *1; Lemons, 15 F.4th at 751; Hald, 8 F.4th at 936 n.2; Broadfield, 5 F.4th at 803; Baeza-Vargas, 532 F. Supp. 3d at 843–46. Therefore, reducing Wynn's sentence because of his risk factors and the general risk of COVID-19 in the prison environment does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, his medical conditions (obesity, hypertension, and prediabetes), his race, his rehabilitative efforts, his employment in prison, his allegedly lowered security risk, and his

5

supportive family and friends are compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the section 3553(a) factors counsel against reducing Wynn's sentence. See Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32.

Wynn is 49 years old and has significant, violent criminal history. Wynn committed the instant felony heroin offense while incarcerated in federal prison for voluntary manslaughter while armed (count one), possession of a firearm during a crime of violence (count two), carrying a pistol without a license (count three), possession of a firearm by a felon (count four), unlawful possession of a firearm (count five), unlawful possession of ammunition (count six), and obstruction of justice (count seven). See PSR ¶¶ 8–15, 24. The manslaughter and firearms convictions stemmed from Wynn and another individual getting in an altercation in Washington, D.C. over a parked car. See id. During the altercation, a bystander told Wynn not to push the other individual. Wynn responded by shooting the bystander in the head and killing him. See id. Moreover, Wynn has significant criminal history dating back to the age of 16. See id. at ¶¶ 19–24.

While incarcerated for manslaughter and firearms convictions, Wynn conspired with his girlfriend, Marlo Lynnice Armstrong ("Armstrong"), to smuggle drugs into prison. See id. at ¶¶ 8–15. Officers learned about the smuggling operation when they stopped Armstrong for speeding, found heroin and marijuana in her car, and Armstrong admitted that Wynn pressured her to engage in the drug smuggling operation. See id. at ¶¶ 8–9. Officers later learned of hundreds of messages between Armstrong and Wynn on Facebook discussing the drug smuggling operation. See id. at ¶

6

10. Armstrong's statements and a later investigation revealed that Wynn used a contraband cell phone in prison, that Wynn worked with and bribed a corrupt prison guard, Arlinda Hendrix Lee ("Lee"), to smuggle in drugs, and that Wynn pressured Armstrong to smuggle in drugs. See id. at ¶¶ 8–15. In total, Wynn is accountable for 10.98 grams of heroin, conspiring to provide and possess heroin in prison, bribing a correctional officer, using a relationship to facilitate the smuggling of contraband, and having an aggravating roll in the offense. See id. at ¶ 15.

While federally incarcerated, Wynn has taken numerous classes to educate and better himself and has a good employment record. See [D.E. 46] 12–14. In July 2021, however, Wynn was sanctioned for possession of an unauthorized item. See [D.E. 46] 16; 46-18. Moreover, the instant offense for which Wynn is convicted was imposed for smuggling heroin, cell phones, and other contraband into a federal prison and for bribing correctional officers to do so. See PSR ¶¶ 8–15.

The court must balance Wynn's overall poor conduct while federally incarcerated with his serious criminal conduct, his serious criminal history, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Concepcion v. United States, 142 S. Ct. 2389, 2403–04 (2022); Pepper, 562 U.S. at 480–81; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. The court also has considered Wynn's potential exposure to COVID-19 pandemic, his medical conditions, his race, his rehabilitative efforts, his employment in prison, and his allegedly lowered security risk. The court recognizes that Wynn has supportive family and friends. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Wynn's arguments, the government's persuasive response, the need to punish Wynn for his serious criminal behavior, to incapacitate Wynn, to promote respect for the law, to deter others, and to protect society, the court denies Wynn's motion for compassionate release. See, e.g., Concepcion, 142 S. Ct. at

7

2403–04; <u>Chavez-Meza</u>, 138 S. Ct. at 1966–68; <u>High</u>, 997 F.3d at 187–91; <u>Ruffin</u>, 978 F.3d at 1008–09; <u>Chambliss</u>, 948 F.3d at 693–94; <u>United States v. Hill</u>, No. 4:13-CR-28, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), <u>aff'd</u>, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

### III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 45].

SO ORDERED. This 19 day of October, 2022.

                                                                             JAMES C. DEVER III
                                                                             United States District Judge

8